25553. BURKE *v.* THE STATE.

*H. A. Boykin,* for plaintiff in error.

*D. A. Bragg, solicitor,* contra.

MACINTYRE, J. The special presentment found at the May term, 1935, of the superior court of Jenkins County charges that on April 24, 1935, Robert Burke had, possessed, and controlled alcoholic, vinous, and malt beverages, contrary to the laws of Georgia. On May 24, 1935, this presentment was transferred to the city court of Millen, and on October 21, 1935, the defendant was found guilty of the offense charged. The exception is to the judgment overruling his motion for new trial containing the general and two special grounds. With a search warrant for "Robert Burke's place," J. L. Taylor, a deputy sheriff, searched a place near Buckhead in Jenkins County, and found there seventy-five pints of whisky and several cases of beer. This occurred on April 24, 1935. The defendant was not there when the officer entered the place, and the search warrant was served on Petefoot, who was in the place of business. Olin Burke also was there. The defendant came in while the whisky was being removed from the shelves, but raised no objection to its being moved, and neither then, nor at any other time, did or said anything to indicate that the whisky or beer was his. Petefoot said: "We will give bond and hold the liquor," but "didn't say who 'we' were." Taylor also testified that at the November term, 1935, of the superior court, "there was a petition brought against . . Robert Burke, to close out that place as being his," and that, on the hearing, the defendant swore "that was his place of business." It is fairly deducible from the record that Taylor swore the defendant testified that said place of business was his, approximately two months after the time said beer and whisky were found on April 24, 1935. The evidence was

objected to on the ground that "the defendant was being tried for something that happened on April 24, 1935, and the solicitor was seeking to inject some . . proceeding that occurred in November." The court admitted the evidence as "a circumstance which the jury might consider in determining whether it was his place of business at that time."

In the main, the testimony of E. C. Breedlove, another deputy sheriff, was the same as that of the witness Taylor. Breedlove swore, in part: "I do not know whether Eddie Coleman has any interest, nor Olin Burke has any, nor whether or not Petefoot owns it all. *From the reputation of the place, it belongs to Robert Burke. I do not know of my own knowledge.* I do not know whether Eddie Coleman has that place leased for five years. I do not know who owned that liquor, nor that beer. *I just know it was found out at the place that had the reputation of belonging to Robert Burke."* (Italics ours.) Sheriff M. G. Johnson testified, in part: "Mr. Robert Burke has never approached me since I got that liquor, . . for the return of the liquor. He has never asked me for it. I just thought it was his. I could not swear positively it was his." Over the same objection offered when the witness Taylor testified, this witness was allowed to testify: "Such a petition was brought. . . I do not recall Mr. Robert Burke testifying in the case. I do know that there was a petition brought, and an order to close it up as Robert Burke's place of business."

We hold that the court did not err in allowing the witness Taylor to testify, over the objection interposed, 'that the defendant swore that the place in question was his, approximately two months after the beer and whisky were found there. We are also of the opinion that the admission of the testimony of the sheriff, referred to above, is no cause for reversing the case. In this connection see *Hayes* v. *State,* 36 *Ga. App.* 668 (137 S. E. 860), where this court cited numerous authorities to sustain the following ruling: "In a prosecution for possessing intoxicating liquor it is not error to admit evidence that on other occasions, both before and after the date of the offense charged in the accusation, such liquor was found in the possession of the accused." It was held in *Cole* v. *State,* 120 *Ga.* 485 (48 S. E. 156) : "On the trial of one charged with illegally selling whisky it is not error to ad-

mit evidence to show that the house of the accused was searched by officers subsequently to the day on which the alleged sale was made, and that bottles of whisky were found there." What is there in the record to indicate that the intoxicants in question were owned, possessed, or controlled by the defendant rather than by some other person present at the place where they were found, or that the business in question was owned by the defendant rather than by some of the other persons referred to by the witnesses? Indeed, there appears to be more reason to conclude that the intoxicants belonged to Petefoot, who was in the place when the officers came and offered to give bond for them, than that they belonged to the defendant. But, it may be asked, what was the effect of the testimony, admitted without objection, that said place "had the reputation of belonging to Robert Burke"? "As a general rule, hearsay or general reputation is not competent evidence of the ownership, control, or proprietorship of property or premises." 16 C. J. 626, § 1241. In Dunn v. State, 72 Tex. Cr. 170 (161 S. W. 467), there was an appeal from a conviction of permitting gaming on the defendant's premises. This question was asked: "What was the general reputation as to who was in possession and control of these premises where defendant stayed?" Over objection, the following answer was given: "It is reputed that defendant and Henry Tillman were in control of said premises." The appellate court held that the testimony "was hearsay, . . and . . not admissible for the purpose of proving control in the defendant." In Perkins v. Roswell, 16 N. M. 185, 190 (113 Pac. 609), it was held that in a prosecution for violation of a municipal ordinance making it unlawful for any "person . . to erect, keep, maintain, or operate any private hospital . . within the limits of the city," it was improper to allow a witness to testify that it was "common knowledge in the neighborhood" that the defendant was running the place in question. In Willingham v. Smith, 48 Ga. 580, 583, the court said: "Upon the face of the answer, it appears that the 'report' the witness referred to applied to both the ownership and the possession or use of the storehouse. It certainly was not competent evidence to prove title by report, nor, indeed, was report admissible to prove the use of the house by the defendant in execution." It was held in Camp v. State, 179 Ga. 292 (175 S. E. 646), that testimony that "It was reported

around town that there was some gonorrhea around town," was inadmissible. "Hearsay evidence is that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons. The very nature of the evidence shows its weakness, and it is admitted only in specified cases from necessity." Code, § 38-301. The evidence in the instant case is not one of the "specified cases," and is hearsay; and while it was admitted without objection, it was without probative value. *Tison* v. *State,* 125 *Ga.* 7 (53 S. E. 809) ; *Equitable Mortgage Co.* v. *Watson,* 119 *Ga.* 280, 283 (46 S. E. 440). We do not think the evidence that the defendant testified that the place in question was his, approximately two months after the time the intoxicants were found there, was sufficient of itself, or with all the other evidence in the case, to show that the defendant had any interest either in the place or the intoxicants on the day the officers raided the place. We do not think the evidence shows the guilt of the accused, to the exclusion of every other reasonable hypothesis. The court erred in overruling the general grounds of the motion for new trial.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*